IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| TOWNSIDE CONSTRUCTION, INC., | ) | |
|     Debtor. | ) | Case No. 16-70629 |
| _____ | | |
| WILLIAM E. CALLAHAN, JR., TRUSTEE, | ) | |
| and PINNACLE BANK, | ) | |
| SUCCESSOR TO VALLEY BANK | ) | |
|     Movants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROANOKE COUNTY, VIRGINIA, | ) | |
| CUNDIFF HEATING & AIR, INC., and | ) | |
| TOWNSIDE CONSTRUCTION, INC. | ) | |
|     Respondents. | ) | |
| _____) | | _____ |
| IN RE: | ) | CHAPTER 7 |
| LANDMARK PROPERTIES, INC., | ) | |
|     Debtor. | ) | Case No. 16-70639 |
| _____ | | |
| WILLIAM E. CALLAHAN, JR., TRUSTEE, | ) | |
| and PINNACLE BANK, | ) | |
| SUCCESSOR TO VALLEY BANK | ) | |
|     Movants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LANDMARK PROPERTIES, INC. | ) | |
|     Respondent. | ) | |

**MEMORANDUM OPINION**

The matter before the Court is the Joint Motion for Authority to Compromise and Settle a Dispute and to Sell Certain Property of the Estate (the "Motion").[1] The Motion was filed by William E. Callahan, Jr., Trustee in each of the above referenced bankruptcy cases (the "Trustee"); Pinnacle Bank ("Pinnacle"), successor to Bank of North Carolina ("BNC") and to

---

[1] See Townside, ECF No. 137 and Landmark, ECF No. 96.

Valley Bank; and Moss & Rocovich, Attorneys-at-Law, P.C. (the "Foreclosure Trustee"). The Trustee, Pinnacle, and the Foreclosure Trustee are collectively referred to herein as the "Movants."

## FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts in the case are largely undisputed.[2] Townside Construction, Inc. ("Townside") filed a voluntary petition for relief in this Court under Chapter 11 of the Bankruptcy Code on May 6, 2016 as Case No. 16-70629. Landmark Properties, Inc. ("Landmark") filed a separate voluntary petition for relief in this Court under Chapter 11 of the Bankruptcy Code on May 9, 2016 as Case No. 16-70639. The Court converted both Debtors' cases to cases under Chapter 7 of the Bankruptcy Code by Order entered May 19, 2017.[3] William E. Callahan, Jr. was duly appointed Chapter 7 Trustee for both the Townside Case and the Landmark Case. Jerry W. Grubb, Sr. is the sole disclosed equity owner of Landmark. Landmark, ECF No. 18. Jerry W. Grubb, Jr. owns 50% of Townside and Jerry W. Grubb, Sr. owns the other 50%. Townside, ECF No. 18. Townside and Landmark are collectively referred to as the "Debtors."

Pinnacle is and has been at all relevant times a creditor of the Debtors. The Debtors were owners and developers of certain real property in the City of Roanoke and the County of Roanoke. Townside is indebted to Pinnacle as evidenced by the following promissory notes: (1) a note dated September 24, 2004, as modified or amended, in the original principal amount of $850,000.00 ("Note 1"), (2) a note dated September 24, 2004, as modified or amended, in the original principal amount of $900,000.00 ("Note 2"), and (3) a note dated December 21, 2012, as modified or amended, in the original principal amount of $1,250,000.00 ("Note 3"). As alleged

---

[2] *See* Stipulation of Undisputed Facts (Townside, ECF No. 146 and Landmark, ECF No. 104) (the "Stipulation").
[3] *See* Townside, ECF No. 124 and Landmark, ECF No. 85.

2

in Pinnacle's Motion for Relief, the unpaid balances on the notes as of May 6, 2016 were as follows: $898,443.95 on Note 1, $704,204.16 on Note 2, and $621,651.88 on Note 3.

To secure repayment of obligations evidenced by the notes, Townside and Landmark pledged certain real property pursuant to deeds of trust as follows: (1) a Credit Line Deed of Trust dated September 24, 2004 in the maximum principal amount of $4,000,000.00 granted by Townside and Landmark on 124.37 acres, Cherokee Hills West, in Roanoke County, Virginia, (2) a Credit Line Deed of Trust dated September 24, 2004 in the maximum principal amount of $600,000.00 granted by Townside on 711 5th Street, in the City of Roanoke, Virginia, and (3) a Credit Line Deed of Trust dated April 26, 2006 in the maximum principal amount of $600,000.00 granted by Townside and Landmark on 104.17 acres, Cherokee Hills West, in Roanoke County, Virginia. The April 26, 2006 Deed of Trust was supplemented on November 11, 2009, adding Lot 27, Section 4, Cherokee Hills, Roanoke County, Virginia. The September 24, 2004 Deed of Trust was supplemented November 11, 2009 by adding the same Lot 27, Section 4, and the September 24, 2004 Deed of Trust was further supplemented on November 12, 2010, adding Lot 3, a 0.268 acre parcel in the City of Roanoke. Stipulation, ¶ 5 and ECF documents referenced therein. As alleged in the Motion for Relief, the total indebtedness owed to Pinnacle from Townside as evidenced by the various notes as of May 6, 2016 was $2,224,299.99, plus interest and fees as provided in the notes. Stipulation, ¶ 7. The Deeds of Trust also secure certain bonds and/or letters of credit issued by Pinnacle for ongoing construction obligations of Townside and Landmark as required by the County of Roanoke. The amounts outstanding on the bonding exposures were, according to the Roanoke County Attorney, $47,791.57 and $283,155.00 respectively as of June 3, 2016. Townside, ECF No. 28-3.

Townside and Landmark each agreed to consent to relief from stay as to Pinnacle if they could not obtain confirmation of a Chapter 11 plan by March 20, 2017.  On March 20, 2017, the Court denied final approval of the Debtors' disclosure statements which terminated their reorganization efforts.  Pinnacle obtained relief from stay that day.  The Trustee filed a report of no distribution in Landmark's case on June 19, 2017, and, given that the Debtor is not an individual, the case was closed without discharge on July 20, 2017.  Landmark, ECF Nos. 89, 90.  On June 12, 2017, the Trustee filed a request for an asset notice in the Townside case, and an asset notice was mailed to creditors with a bar date for filing claims.

Pinnacle thereafter moved to foreclose much, but not all, of the Debtors' remaining real property pledged as collateral to the Bank.  Foreclosure sales were conducted on February 9, 2017 and May 23, 2017 (the "Foreclosure Sales").[4]  The only real estate owned by Townside which has not been subjected to a completed foreclosure is Lot 49, Section 4, Cherokee Hills ("Lot 49").   Lot 49 is an unbuildable parcel which contains certain drainage facilities necessary for further development of the Cherokee Hills subdivision. The high bidder on two separate parcels at the February 9, 2017 Foreclosure Sale was Pinnacle.[5]  The high bidder on five parcels (the "Five Reynolds Tracts") and five lots (the "Cherokee Hills Lots") included in the May 23, 2017 Foreclosure Sale was Pinnacle as well.  The high bidder on an acreage tract (the "Acreage Tract") included in the May 23, 2017 Foreclosure Sale was R. Fralin Companies, Inc., which assigned its rights in the property to RFC2017 Land, LLC.  The latter tract sold at foreclosure for $432,000.00.

---

[4] Pursuant to an earlier agreement with the Debtors and an Order of the Court, relief from stay was granted as to 5171 Arrowhead Trail and 5044 Buffalo Circle, two partially completed houses, to allow BNC, Pinnacle's predecessor, to move to foreclosure on those parcels.
[5] BNC was the actual bidder, but Pinnacle acquired BNC after the sale.

4

Neither Townside nor Landmark listed the indebtednesses due to Pinnacle, then BNC, in their schedules as contingent, liquidated, or disputed. Further, neither Townside nor Landmark filed any schedules in either case disclosing any causes of action against Pinnacle or its predecessors in interest as a property interest. No amended schedules to that effect have been filed either.

I. **The First State Court Lawsuit**

Without the participation of the Trustee, the Debtors filed a state court lawsuit against Pinnacle and the Foreclosure Trustee on or about July 31, 2017, in the Circuit Court for the County of Roanoke, Virginia (the "First Lawsuit"). On August 1, 2017, in conjunction with the filing of the First Lawsuit, the Debtors' counsel in the state court litigation filed a Memorandum of Lis Pendens in the Clerk's Office of the Circuit Court for the County of Roanoke. Pinnacle removed the First Lawsuit to this Court on August 22, 2017. Townside, ECF No. 131.

The First Lawsuit dealt solely with the then pending foreclosure of Lot 49. The Debtors alleged that the proposed foreclosure sale should not go forward because the sale was not properly advertised, the notice of the sale was not properly mailed to the plaintiffs, and that the Foreclosure Trustee did not fulfill its duties to the parties pursuant to the relevant deeds of trust. The sale did not go forward, having been cancelled by either the Foreclosure Trustee or the Bank. Instead, since the Landmark case was closed on July 20, 2017, Pinnacle moved to re-open the case, and on October 18, 2017 the Trustee, Pinnacle and the Foreclosure Trustee moved for the entry of a settlement agreement in connection with Lot 49.

The terms of the proposed settlement are summarized as follows: (1) Pinnacle will pay $29,500.00 to the Trustee after the entry of a final and non-appealable order approving the settlement. In exchange for the settlement funds, (1) the Trustee will convey Lot 49 by Special

Warranty Deed and the Declarant Rights in the Cherokee Hills development by Special Warranty Bill of Sale to Pinnacle or its designee. (2) The Trustee will execute a "mutual general release" of Pinnacle, the Foreclosure Trustee, and their respective related entities by which the Trustee will release the released parties from all claims against them, whether asserted or not, by Townside and Landmark and further confirm that the Debtors' respective estates retain no lien, claim, interest, right, or ownership in any of the real property foreclosed pursuant to the Foreclosure Sales. (3) At settlement, the Trustee, on behalf of the Debtors' estates, and their respective officers, directors, successors, assigns, affiliates, agents, heirs, and legal representatives, will release Pinnacle and the Foreclosure Trustee along with their respective officers, directors, agents, and others from any and all claims, demands, causes of actions, whether known or unknown, and "accruing from the beginning of time through the date of the entry of the Approval Order."  Townside, ECF No. 137.  The release is intended to include, but not be limited to, any and all matters pertaining to Lot 49, but also to any of the Foreclosure Sales and any matters asserted in the First Lawsuit.  *Id.*

## II. The Second State Court Lawsuit

Prior to the hearing on the Motion, on or about November 17, 2017, the Debtors filed a second state court lawsuit against Pinnacle, the Foreclosure Trustee, Robert Fralin ("Fralin"), and RFC2017 LAND, LLC in the Circuit Court for the County of Roanoke, Virginia (the "Second Lawsuit").  In conjunction with the filing of the Second Lawsuit, the Debtors' counsel in the state court litigation filed a Memorandum of Lis Pendens in the Clerk's Office of the Circuit Court of Roanoke County.  Pinnacle removed the Second Lawsuit to this Court on December 12, 2017.  Townside, ECF No. 145.

The Second Lawsuit focused on the May 23, 2017 foreclosure sales of the Townside Property and the Landmark Property. Distilled to its essence, the gist of the Second Lawsuit allegations is that Pinnacle and its loan officers colluded with Fralin and his related entities to steer portions of the foreclosed property to the Fralin entities, who allegedly had improper access as to what Pinnacle would bid at the sale, thereby allowing Fralin to acquire the property for less than fair value. The Debtors further contend that the Bank rejected an offer to sell a portion of its loan collateral – the 5th Street Building – for the debts to Pinnacle prior to filing, and instead, at the direction of one of Pinnacle's predecessor banks, they sold it for a lesser value to a Pinnacle customer, who allegedly had inside information affecting the Debtors' negotiating position. ECF No. 140-1, at ¶¶ 13-19.[6] As set out in the Complaint, the Plaintiffs request that the May 23, 2017 foreclosure sale be rescinded as to certain of the Landmark and Townside property sales, that damages and attorney's fees be awarded to the Plaintiffs for BNC, now a division of Pinnacle, having breached fiduciary duties and invaded the Plaintiffs' privacy rights and for Pinnacle, Fralin and his related entities having engaged in statutory and common law civil conspiracies to deprive the Plaintiffs of their properties for less than fair value. The Plaintiffs also brought a breach of fiduciary duty claim against the Foreclosure Trustee.

### III.     The Joint Settlement Motion

On November 20, 2017, the Court held a hearing on the Motion. At that time, the Second Lawsuit had only just been filed, and a copy of the complaint in that lawsuit was filed with the Court on November 17, 2017. Townside, ECF No. 140-1. The Court expressed its concern at the November 20, 2017 hearing as to whether a sufficient record existed to determine (1) whether the causes of actions asserted in the lawsuits were property of the various estates, and

---

[6] These are all merely allegations at this point, and the Court treats them as such.

7

(2) if so, whether the settlement proposed was fair and reasonable.  The Trustee made clear his position that any causes of action arising from or in connection with the foreclosures of estate property were property of the estates, and further asserted that neither the Debtors' bankruptcy counsel nor its litigation counsel had obtained his authorization to file either lawsuit, with or without his participation.  Both Debtors' bankruptcy and litigation counsel assert that the causes of action alleged are not property of the estates and that they are free to bring the litigation on behalf of the Debtors without the Trustee's involvement or participation.  The Trustee conceded he has an obligation to investigate the merits, if any, of the litigation if it was property of the estates.  As a result, the Court asked for further briefing, and the parties also agreed to submit a stipulation of facts.  The parties have fully briefed the matter and the Stipulation has been filed.

Citing *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), the Debtors now concede that the claims alleged in their Second Lawsuit for invasion of privacy and breach of fiduciary duty against Pinnacle are "sufficiently rooted" in the Debtors' pre-petition past to warrant dismissal on standing grounds as these claims are based on Pinnacle's alleged improper disclosure of the Debtors' loan information in advance of their bankruptcy filings.  The Movants assert that all causes of action in both state court actions are property of the Debtors' respective estates, and thus are subject to settlement by the Trustee.  Landmark and Townside contend the remaining causes of action are not property of the Debtors' estates, and that the Trustee has no standing to compromise or settle them on their behalf.

## CONCLUSIONS OF LAW

### I.     Jurisdiction and Venue

This action arises under 11 U.S.C. § 363, Federal Rule of Bankruptcy Procedure 6004, and Federal Rule of Bankruptcy Procedure 9019.  This is a core proceeding under 28 U.S.C. §

157(b)(2)(A). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408. This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on December 6, 1994 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia.

## II.    The Statutory Framework

"Whether an asset is property of the estate is a legal determination which frequently entails complex analyses involving a number of legal elements and a variety of facts." *In re Chesnut,* 422 F.3d 298, 303 (5th Cir. 2005).[7] Section 541(a) of the Bankruptcy Code provides for the creation of a bankruptcy estate upon the commencement of a bankruptcy case. 11 U.S.C. § 541(a). The scope of the broad definition set forth in Section 541 of property of the bankruptcy estate is both comprehensive and far-reaching. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "The question of what constitutes property of the estate is a question of federal law." *Terry v. Evans (In re Evans)*, 527 B.R. 228, 234 (Bankr. E.D. Va. 2015). "It includes both real and personal property interests of the Debtor. It includes all tangible and intangible interests in property and all causes of action. It applies to all property in the Debtor's possession as well as property held by third parties. It covers property wherever located. Section 541 of the Bankruptcy Code is intended to bring 'anything of value that . . . debtors have in the estate.' H.R. Rep. 95–595, at 176 (1977)." *Id.*

---

[7] In their joint brief, the Trustee and Pinnacle state that "[t]he parties to this memorandum deny that there is any serious dispute that the causes of action at issue are property of the estate. However, giving the Debtors the benefit of the doubt does not change the conclusion." Joint Brief, at p. 19, fn. 8. While the Court may come to the same result, it disagrees getting to that answer is quite so simple. That the Trustee and the Bank have lined up so vocally in support of each other brings to mind Shakespeare's often misquoted Queen Gertrude from *Hamlet*, "The lady doth protest too much, methinks." William Shakespeare, *Hamlet*, Act 3, Scene 2.

"Congress intended that courts broadly construe the scope of § 541(a)(1), and that bankruptcy estate property encompass both tangible and intangible property, including causes of action existing at the time the debtor files his bankruptcy petition." *Stackhouse v. Plumlee (In re Plumlee)*, 236 B.R. 606, 611 (E.D. Va. 1999); *see also Logan v. JKV Real Estate Servs. (In re Bogdan)*, 414 F.3d 507, 512 (4th Cir. 2005) ("'property of the estate' under § 541(a) has uniformly been interpreted to include causes of action") (internal quotations omitted). Further, under § 541(a)(7), "property of the estate" also includes "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7); *In re TMT Procurement Corp.,* 764 F.3d 512, 523 (5th Cir. 2014). Courts interpreting Section 541(a)(7) have held that it is confined to property interests that are themselves traceable to "property of the estate" or generated in the normal course of a debtor's business. *TMT,* at 524. "'The party seeking to include property in the estate bears the burden of showing that the item is property of the estate.'" *Id*. at 523 (citing *In re Klein–Swanson*, 488 B.R. 628, 633 (8th Cir. BAP 2013)).

**III.**    *Segal v. Rochelle*

A more difficult question arises when a property interest reveals itself to have both existence and value after the commencement of the case. In that circumstance, the question becomes whose asset is it? Is it an asset of the estate or an asset of the Debtor? Also difficult is when only partial aspects or glimpses of the potential asset present themselves pre-petition, and the balance come to light much later. In *Segal*, the Supreme Court considered, under the former Bankruptcy Act, whether or not the debtors' claims for loss-carryback tax refunds were property of the debtors' bankruptcy estates or property of the individual debtors. Under the tax laws, the loss-carryback refunds claims could only be asserted when the tax year had closed, which was post-petition in each debtor's case. Thus, the tax refunds in *Segal* were sought and received after

the bankruptcy filings. After analyzing the relevant Bankruptcy Act provision and its broad inclusion language, and observing that taxes were paid on net income in prior years and that the year of bankruptcy exhibited a net operating loss, the Court concluded that the loss-carryback refunds were "sufficiently rooted in the pre-bankruptcy past . . . that [they] should be regarded as 'property'" under the Bankruptcy Act. 382 U.S. at 380, 86 S.Ct. at 515. Notwithstanding the subsequent enactment of the Bankruptcy Code, *Segal* remains good law in this Circuit. *Jenkins v. A.T. Massey Coal Co., Inc. (In re Jenkins)*, 410 B.R. 182, 189 (Bankr. W.D. Va. 2008) (citing *Andrews v. Riggs National Bank (In re Andrews),* 80 F.3d 906 (4th Cir. 1996)). In *Andrews*, the Fourth Circuit found that post-petition payments under a pre-petition noncompetition agreement were property of the estate. *Andrews*, at 910-11. The Fourth Circuit applied the *Segal* test again after *Andrews* in *Bearman v. Shearin (In re Shearin)*, 224 F.3d 346 (4th Cir. 2000). There, the question again arose whether assets which were received post-petition were sufficiently rooted in the debtor's pre-bankruptcy past to be included as property of the estate. In *Shearin*, the Fourth Circuit concluded that the portion of a debtor's year end distribution of partnership profits earned pre-petition was property of the estate even though such distribution did not occur until after the commencement of the case. *Id.* at 351-52.

### IV.     **Application of Section 541(a) and *Segal* to this Case**

The Debtors' collective position in this case is fairly straightforward. They have no objection to the Motion to the extent that it contemplates a sale of assets and/or release of claims that are property of the Townside and Landmark bankruptcy estates. Debtors' Response, Townside, ECF No. 139, p. 2 and Landmark, ECF No. 98. However, the Debtors object to any such releases being applicable to post-petition causes of action that are not property of the Debtors' estates. Simply put, the Debtors contend that "the actions contemplated to be released,

11

which arise from post-petition foreclosure sales conducted by Pinnacle Bank," and, quoting *Segal*, "conduct associated with the post-petition foreclosure sales, have nothing to do with and are not 'sufficiently rooted' in the Debtors' past." *Id.*

In this case, the stipulated facts establish that the Debtors and Pinnacle, through its predecessor banks, had a long relationship pre-petition, dating back to 2004 when the first loans evidenced by the notes and secured by the deeds of trust were made. Clearly, the relationship became rocky, in part because of the housing downturn suggested by Jerry Grubb's letter to BNC on behalf of Townside dated January 11, 2016, and as set forth in the Debtors' Chapter 11 Disclosure Statement filed on November 18, 2016. *See* Townside, ECF No.140-1, Exhibit B to Second Lawsuit; ECF No. 69, p. 4. On February 1, 2016, Grubb again wrote to the same loan officer at BNC as follows:

> I got a call last week from Mr. Robert Fralin, a local/builder developer, and a major client of your bank. Our initial conversation focused on his interest in my development. He made me an offer I could not accept. I asked him not to contact my bank but he indicated that he was going to and I suppose to try [to] make a direct back door offer undermining my ability to negotiate a settlement with BNC. He told me that an appraiser told him about my project, but I called every appraiser that had anything to do with my project for the last 2 years and they all vehemently denied talking to him. This had to come from someone at the bank. This is exactly what happened on my office building and I will not tolerate it again. I realize that I'm not in a strong position but this is wrong and probably illegal. My offer still stands, and in fact my investors have indicated that they would entertain a counter offer from the bank.

Townside, ECF No. 140, Ex. C to Second Lawsuit.

Whether the allegations in the above referenced letter are true or not is not a question presently before the Court. However, they are insightful for several reasons. At least as early as February 2016, Townside had suspicions that Pinnacle was communicating with other bank customers about its loans with Pinnacle, not only in connection with the Cherokee Hills project, but also in connection with the sale of the 5th Street Building. Townside did not file its

12

bankruptcy petition until May 6, 2016. It stayed in Chapter 11 until the case was converted on May 19, 2017, over a year later. Townside reflected none of these concerns in its bankruptcy schedules and if the Trustee is correct in his representations to the Court, which the Court has no reason to believe are untrue, they were not disclosed in the meeting of creditors once the case was converted to Chapter 7. None of these concerns came to the surface during the Chapter 11 case, including in their disclosure statement or plan of reorganization. In fact, the Debtors agreed to grant Pinnacle relief from stay, neither disputing the loan balances or sums due, nor raising any concerns about potential offsets. An Order to that effect was entered on March 20, 2017, after notice to creditors pursuant to Federal Rule of Bankruptcy Procedure 4001(d). Townside, ECF Nos. 110, 115. To date, neither Debtor has ever amended a schedule to reflect any cause of action against Pinnacle, its predecessors, or against the Foreclosure Trustee.

Further, on May 23, 2017, the foreclosure sale about which the Debtors complain in the Second Lawsuit took place. It was up to and at that sale that Pinnacle and Fralin are alleged to have engaged in collusion, witnessed by representatives of the Debtors. The meeting of creditors in the Debtors' cases did not take place until June 16, 2017. None of the Debtors' suspicions were conveyed to the Trustee in either case at that time, and the Trustee proceeded to file a no asset report in the Landmark case on July 20, 2017. Certainly, as to Townside – an asset case – if there was collusion at the sale and property was sold for less than fair value, it potentially impacts the estate by driving up deficiency claims and diluting the unsecured creditor class. These are issues in which the Trustee and the estate unquestionably have an interest. If Pinnacle leaked or steered confidential loan information to third parties, especially its other customers, which would affect claims against the estate, this is something the Trustee has both the right and duty to explore. If Landmark was damaged, the Trustee has the further duty to explore collusion

13

in that case as well, and perhaps see if an award of monetary damages would supplement the estate. The Landmark case is now reopened. The Court finds that the causes of action alleged by the Debtors are "sufficiently rooted" in the Debtors' pre-bankruptcy pasts with Pinnacle to fall within the *Segal* test, and further that the alleged causes of action sufficiently flow from the Debtors' prepetition assets such as to fall within the scope of 11 U.S.C. § 541(a)(1) and (7). Further, Section 554(c) of the Bankruptcy Code provides that "[u]nless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of the case is abandoned to the debtor and administered for purposes of section 350 of this title." 11 U.S.C. § 554(c). As the causes of action were never scheduled under Section 521(a)(1), they were neither administered nor abandoned by the Trustee and remain property of the estate.

The Court further notes these are corporate debtors, not individuals. They will receive no discharge in Chapter 7. 11 U.S.C. § 727(a)(1). Were the Debtors to proceed as plaintiffs in state court, any recovery in terms of damages they were able to obtain will be subject to the claims of Townside's and Landmark's creditors. Those claims are not extinguished. 6 *Collier on Bankruptcy*, ¶ 727.01[3] (16th ed. rev. 2016). Further, "[a]fter liquidation, any dissolution of the corporation or partnership that the parties desire must be effectuated under state law, since the Code does not provide for dissolution of corporations or partnerships." *Id.* In Virginia, it has been held that "a dissolved domestic corporation is no corporation at all." *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531 (4th Cir. 1988) (citing *McLean Bank v. Nelson*, 232 Va. 420, 426, 350 S.E.2d 651 (1986) (decided under prior version of Virginia Stock Corporation Act)). Whether or

not the Debtors are dissolved or "defunct" as some courts have suggested,[8] the Court believes the Chapter 7 Trustee is in the better position to address these potential assets for the benefit of creditors, if he determines they have value and it is cost-effective to pursue, compromise, or otherwise administer them.

## **CONCLUSION**

The only matter the Court decides today is whether the causes of action asserted by Townside and Landmark in the two state court lawsuits are property of their Chapter 7 estates. The Court concludes that they are.  Part of what concerned the Court at the November 20, 2017 hearing was that the Trustee was proposing to provide Pinnacle with a general release after having just been apprised of the existence and nature of the Second Lawsuit.  Contrary to the old adage, smoke does not always mean fire.  Whether a proposed settlement with Pinnacle is appropriate or proper is a question to be answered another day once the Trustee has performed his duties.

An appropriate Order shall issue.

Decided this  14th  day of March, 2018.

_____
UNITED STATES BANKRUPTCY JUDGE

---

[8] Compare *Matter of Federal Insulation Dev. Corp.*, 14 B.R. 362, 364 (Bank. S.D. Ohio 1981), and *In re Liberty Tr. Co.,* 130 B.R. 467, 471 (W.D. Tex. 1991), with *In re CVA General Contractors, Inc*. 267 B.R. 773, 781 n. 10 (Bankr. W.D. Tex. 2001).